# United States Court of Appeals
# for the Fifth Circuit

---

No. 23-10952

---

United States of America,

*Plaintiff—Appellee*,

*versus*

Alvaro Alejandro Mancilla,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CR-359-1

---

Before Elrod, *Chief Judge*, and King and Graves, *Circuit Judges*.
Per Curiam:

Alvaro Alejandro Mancilla pleaded guilty to violating 18 U.S.C. § 922(g)(1), the felon-in-possession statute. On appeal, he argues that the statute is unconstitutional as applied to him. Because Mancilla's argument is foreclosed by our precedent, we AFFIRM.

I

In 2022, Mancilla and his cousin were arrested at a gun show in Fort Worth, Texas. Agents recovered five firearms and $27,072 in cash from the cousins. Mancilla, who had been convicted of felony possession with intent

to distribute cocaine in 2010, pleaded guilty to possessing a firearm as a felon. He timely filed a notice of appeal, arguing that § 922(g)(1) violates the Second Amendment as applied to him in light of *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024). *See* Fed. R. App. P. 4(b)(1)(A)(i).

II

Mancilla preserved his as-applied challenge to § 922(g)(1) by raising it in a motion to dismiss the indictment, so we review the criminal statute's constitutionality *de novo*. *United States v. Giglio*, 126 F.4th 1039, 1042 (5th Cir. 2025).

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. The conduct prohibited by § 922(g)(1)—possession of a firearm by a person convicted of a crime punishable by more than one year of imprisonment—is covered by "[t]he plain text of the Second Amendment." *See* 18 U.S.C. § 922(g)(1); *United States v. Diaz*, 116 F.4th 458, 467 (5th Cir. 2024), *cert. denied*, --- S. Ct. ----, 2025 WL 1727419 (2025). Therefore, "[t]he government must . . . justify its regulation by demonstrating that [§ 922(g)(1)] is consistent with the Nation's historical tradition of firearm regulation." *See Bruen*, 597 U.S. at 24; *see also Rahimi*, 602 U.S. at 692. In other words, the government "must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [Mancilla's]." *Diaz*, 116 F.4th at 467.

The government has met its burden. After the parties' briefing and oral argument, we decided *United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025). *Kimble* is directly on point for drug-trafficking predicate offenses, and

it forecloses Mancilla's argument that he is a "[n]onviolent [f]elon" who cannot be constitutionally disarmed.[1]

Kimble, who was previously convicted of two drug-trafficking felonies, was charged with violating § 922(g)(1). *Id.* at 309. Kimble challenged the constitutionality of the statute both facially and as applied to him. *Id.* at 310 & n.2. The government raised the same arguments in *Kimble* as it does in Mancilla's case. *See id.* at 312. We rejected the government's contention that drug trafficking is analogous to Founding-era felonies that were punishable by death or estate forfeiture, like "the knowing receipt of a stolen horse or the forgery of public securities." *See id.* However, we agreed that "Kimble's record of drug trafficking . . . underscores that he is the sort of dangerous individual that legislatures have long disarmed." *See id.* at 314–15 (holding that "§ 922(g)(1)'s prohibition on gun possession by individuals convicted of drug-trafficking felonies [is] consistent with *Bruen*'s . . . test").

Likewise, Mancilla's "predicate conviction[] for drug trafficking convey[s] that he belongs to a class of dangerous felons that our regulatory tradition permits legislatures to disarm." *See id.* at 318. "[D]rug trafficking is an inherently dangerous activity" due to the "intrinsic violence of the drug trade." *See id.* at 312, 316–17. And "Congress can categorically disarm individuals convicted of violent felonies like drug trafficking," so Mancilla

---

[1] The dissenting opinion believes that *Kimble* is in tension with *United States v. Reyes*, 141 F.4th 682 (5th Cir. 2025). There are indeed differences in approach between the two cases when assessing dangerousness. *Kimble* is directly on point, however, and *Reyes* did not purport to set the standard for all § 922(g)(1) cases. *Kimble* set the standard specifically for this category of predicate offenses. *See Kimble*, 142 F.4th at 312. Moreover, the other two cases cited by the dissenting opinion did not involve drug-trafficking predicates. *See United States v. Alaniz*, 146 F.4th 1240, 1241 (5th Cir. 2025) (considering felony convictions for possession of a controlled substance and burglary); *United States v. Morgan*, 147 F.4th 522, 525 (5th Cir. 2025) (considering a felony conviction for illegal use of a weapon).

No. 23-10952

may be constitutionally disarmed without an "individualized assessment that [he] is dangerous."[2]  *See id.* at 318.  Under our binding precedent, Mancilla's drug-trafficking conviction establishes his dangerousness.  *See id.* at 317–18.  Accordingly, Section 922(g)(1) is constitutional as applied to Mancilla.

*        *        *

For the reasons stated above, the judgment of conviction is AFFIRMED.

_____

[2] *Kimble* instructs that "[t]he relevant consideration is a defendant's 'prior convictions that are punishable by imprisonment for a term exceeding one year,' not unproven conduct charged contemporaneously with a defendant's (g)(1) indictment or prior conduct that did not result in a felony conviction."  142 F.4th at 318 (quoting *United States v. Diaz*, 116 F.4th 458, 467 (5th Cir. 2024), *cert. denied*, --- S. Ct. ----, 2025 WL 1727419 (2025)).  *Kimble* did not rely on the defendant's other criminal history or characteristics.  *See id.* at 309, 318.  So we do not consider Mancilla's other criminal history, such as misdemeanor convictions or arrests.

4

No. 23-10952

JENNIFER WALKER ELROD, *Chief Judge*, concurring:

I agree that the majority opinion is a correct statement of law under our binding precedent. Were I writing on a blank slate, however, I believe that a more individualized assessment of dangerousness might be appropriate when adjudicating as-applied challenges to § 922(g)(1). *See United States v. Kimble*, 142 F.4th 308, 321–22 (5th Cir. 2025) (Graves, J., concurring in part and in the judgment); *see also post* at 10–11.

Mancilla's predicate conviction, committed more than a decade before the instant offense, is one of the "occasional[]" cases of possession with intent to distribute that "did not involve a weapon or any violence." *Id.* at 322. In 2010, Mancilla transported about a kilogram of cocaine from Mexico to the United States. The bus he was riding was stopped at a border checkpoint, and agents discovered the cocaine on his seat. He was 19 years old at the time. He has no other felony convictions. But because he has a drug-trafficking conviction, under our binding precedent, he can be "disarmed for life without any chance of ever proving he was not a danger." *Id.*

Many of the historical analogues imposing categorical, class-based disarmament allowed a person "an opportunity to make an individualized showing that he himself [was] not actually dangerous." *United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024) (Thapar, J.); *see id.* at 651–54, 656. Thus, disarmament under such laws was effectively temporary, not a permanent, lifetime ban on firearm possession. *See United States v. Duarte*, 137 F.4th 743, 794–95 (9th Cir. 2025) (*en banc*) (VanDyke, J., concurring in the judgment in part and dissenting in part); *cf.* 18 U.S.C. § 922(g)(1).

Simply put, if the justification for disarmament was dangerousness, then that burden could be lifted if an individual was no longer considered

5

No. 23-10952

dangerous.[1] Moreover, "we must factor in the particularities of an individual's circumstances when adjudicating as-applied challenges." *United States v. Giglio*, 126 F.4th 1039, 1045 (5th Cir. 2025). So assessing an individual defendant's dangerousness based on his or her relevant criminal conduct[2] is fitting in the context of § 922(g)(1) challenges.[3]

---

[1] The statutory scheme actually includes certain exceptions to permanent disarmament that recognize situations in which an individual is no longer considered dangerous. For instance, a person is not subject to § 922(g)(1) if his conviction has been "expunged," he has been pardoned, or his civil rights have been restored. 18 U.S.C. § 921(a)(20). And under § 925(c), a felon may petition the Attorney General for restoration of his right to bear arms. Such relief may be granted if "the applicant will not be likely to act in a manner dangerous to public safety" and "the granting of the relief would not be contrary to the public interest." *Id.* § 925(c). Congress has not provided funding to investigate or act upon such relief applications since 1992. *See Logan v. United States*, 552 U.S. 23, 28 n.1 (2007). However, this year, the Attorney General has taken steps to revive this avenue of relief. *See* Application for Relief From Disabilities Imposed by Federal Laws With Respect to the Acquisition, Receipt, Transfer, Shipment, Transportation, or Possession of Firearms, 90 Fed. Reg. 34394 (proposed July 22, 2025) (to be codified at 28 C.F.R. pts. 25, 207).

[2] We have generally looked only at a defendant's predicate offenses, *i.e.*, prior convictions punishable by more than one year of imprisonment, even when assessing dangerousness. *See, e.g.*, *United States v. Diaz*, 116 F.4th 458, 467 (5th Cir. 2024) (describing the defendant's "pertinent criminal history" as his "prior convictions that are 'punishable by imprisonment for a term exceeding one year'" (quoting § 922(g)(1))), *cert. denied*, --- S. Ct. ----, 2025 WL 1727419 (2025); *United States v. Schnur*, 132 F.4th 863, 867 (5th Cir. 2025); *Kimble*, 142 F.4th at 318. We may look at predicate offenses other than the explicit predicate underlying the § 922(g)(1) conviction. *See United States v. Alaniz*, 146 F.4th 1240, 1241–42 (5th Cir. 2025) (noting that "[c]onsidering 'a defendant's entire criminal record . . . makes sense, given that the government doesn't need to prove the specific predicate felony in securing a conviction under § 922(g)(1) in the first place'" but citing our caselaw treating "misdemeanors [as] irrelevant to § 922(g)(1)" (second alteration in original) (citations omitted)); *United States v. Clark*, --- F.4th ----, 2025 WL 2417117, at *3 (5th Cir. Aug. 21, 2025) ("[W]e have considered more than the government's proffered predicate felony . . . ."). By contrast, two of our sister circuits expressly consider a person's entire criminal history. *See infra* note 5.

[3] In an as-applied challenge to § 922(g)(3), which prohibits unlawful users of controlled substances from possessing firearms, we rejected the government's

No. 23-10952

Our caselaw in this area is developing very quickly by necessity, and it has sometimes done so in broad swathes, deeming certain types of offenses to be constitutionally valid predicates for disarmament.[4]  This is a perfectly reasonable approach: it provides clearer notice to those with felony

_____

dangerousness argument because drug users were not comparable to groups disarmed at the Founding, and "the government ha[d] not shown how [the defendant's drug] use predispose[d] her to armed conflict or that she ha[d] a history of drug-related violence." *United States v. Connelly*, 117 F.4th 269, 278–79 (5th Cir. 2024).

[4] *See Kimble*, 142 F.4th at 318 (holding that "Congress can categorically disarm individuals convicted of violent felonies like drug trafficking"); *Schnur*, 132 F.4th at 870 (explaining that "crime[s] of violence," such as aggravated battery, justify disarmament); *Clark*, --- F.4th at ----, 2025 WL 2417117, at *2–3 (concluding that aggravated assault with a firearm was "clearly a dangerous and violent crime"); *see also Diaz*, 116 F.4th at 469–70 (reasoning that permanent disarmament is a permissible punishment for crimes that are analogous to felonies punishable by death or estate forfeiture at the Founding); *Schnur*, 132 F.4th at 870–71 (concluding that "theft-related felony convictions," such as robbery and burglary, may be punished with permanent disarmament); *cf. Kanter v. Barr*, 919 F.3d 437, 468 (7th Cir. 2019) (Barrett, J., dissenting) (suggesting that, under the now-abrogated means-end analysis, "[i]f Kanter's conviction . . . is substantially related to violent behavior, the government[] can disarm him without regard to any personal circumstances or characteristics suggesting that he poses a low risk to public safety").

However, in several other cases, we have looked to the specific facts of a defendant's predicate offense(s), suggesting that a more individualized assessment is appropriate.  *See United States v. Contreras*, 125 F.4th 725, 730, 732 (5th Cir. 2025) (determining that the defendant was intoxicated at the time of the predicate offense); *United States v. Betancourt*, 139 F.4th 480, 483–84 (5th Cir. 2025) (examining "[t]he details of Betancourt's aggravated assault convictions"); *United States v. Reyes*, 141 F.4th 682, 686 & n.8 (5th Cir. 2025) (describing a prior conviction for evading arrest as "violent conduct" based on the facts of that offense); *United States v. Morgan*, 147 F.4th 522, 528 (5th Cir. 2025) ("[The government's] account of Morgan's conduct underlying the predicate offense is both permissible and revealing.").

Finally, we have upheld restrictions on firearm possession at certain times in the criminal process.  *See Giglio*, 126 F.4th at 1044 (holding that individuals "who continue to serve sentences for felony convictions," such as defendants on supervised release, may be disarmed); *United States v. Quiroz*, 125 F.4th 713, 718 (5th Cir. 2025) (describing the historical support for "disarming criminal defendants facing serious charges pending trial").

convictions about which offenses are valid § 922(g)(1) predicates, and it is certainly more administrable for courts to apply. *Cf. United States v. Schnur*, 132 F.4th 863, 871 (5th Cir. 2025) (Higginson, J., concurring) (noting that "we must ensure Americans are given particularized notice" and "give district courts clear instructions as to how, when, and by whom the determination that a felony predicate qualifies for § 922(g)(1) must be made").[5]

_____

[5] There is already a robust circuit split on this issue. In the wake of *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), many of our sister circuits have held that § 922(g)(1) is constitutional as applied to *all* felons. The Second, Fourth, Eighth, and Ninth Circuits have done so based in part on prior precedent and based in part on historical analysis. *See Zherka v. Bondi*, 140 F.4th 68, 74–75, 77–79, 91–93 (2d Cir. 2025); *United States v. Hunt*, 123 F.4th 697, 700 (4th Cir. 2024), *cert. denied*, --- S. Ct. ----, 2025 WL 1549804 (2025); *United States v. Jackson*, 110 F.4th 1120, 1125–26 (8th Cir.), *reh'g en banc denied*, 121 F.4th 656 (8th Cir. 2024), *cert. denied*, --- S. Ct. ----, 2025 WL 1426707 (2025); *United States v. Duarte*, 137 F.4th 743, 750–52, 761–62 (9th Cir. 2025) (*en banc*). The Tenth and Eleventh Circuits have relied entirely on prior precedent upholding § 922(g)(1). *See Vincent v. Bondi*, 127 F.4th 1263, 1265–66 (10th Cir. 2025), *petition for cert. filed*, No. 24-1155 (U.S. May 12, 2025); *United States v. Dubois*, 139 F.4th 887, 888–89 (11th Cir. 2025).

By contrast, the Third and Sixth Circuits allow as-applied challenges to § 922(g)(1), and both circuits require district courts to make individualized determinations of dangerousness when adjudicating those challenges. *See Pitsilides v. Barr*, 128 F.4th 203, 210, 213 (3d Cir. 2025) (involving a plaintiff's request for a declaratory judgment entitling him to possess a firearm in the future); *United States v. Williams*, 113 F.4th 637, 657, 663 (6th Cir. 2024) (Thapar, J.) (resolving an appeal of a § 922(g)(1) conviction). Courts in those circuits consider the person's entire criminal history, including the predicate offense and its underlying conduct. *See Pitsilides*, 128 F.4th at 212–13; *Williams*, 113 F.4th at 663.

The First Circuit does not appear to have yet reviewed an as-applied challenge *de novo*. *See United States v. Langston*, 110 F.4th 408, 419–20 (1st Cir.) (rejecting challenge under plain error review), *cert. denied*, 145 S. Ct. 581 (2024). The Seventh Circuit has assumed *arguendo* that there is some room for as-applied challenges, but it appears to have thus far rejected them. *See United States v. Gay*, 98 F.4th 843, 846–47 (7th Cir. 2024) (concluding that the defendant was "not a 'law-abiding, responsible' person" (citation omitted)).

No. 23-10952

Nonetheless, if we were not bound, I believe that conducting an as-applied analysis might require us to parse dangerousness more finely, just as we parse the facts more finely in other contexts. *See United States v. Allam*, 140 F.4th 289, 295 (5th Cir. 2025) (analyzing "the application of [§ 922(q)(2)(A)] to Allam's specific circumstances" (quoting *Freedom Path, Inc. v. IRS*, 913 F.3d 503, 508 (5th Cir. 2019))); *cf. Justice v. Hosemann*, 771 F.3d 285, 292 (5th Cir. 2014) (explaining in the First Amendment context that "a developed factual record" with "[p]articularized facts" is "essential" to support an as-applied challenge). But because the majority opinion faithfully applies our existing precedent, I concur.

No. 23-10952

JAMES E. GRAVES, JR., *Circuit Judge*, dissenting.

I disagree with the majority and the concurring opinions that our binding precedent forecloses an individualized assessment. While I concurred in part and in the judgment of *United States v. Kimble*, 142 F.4th 308, 318–22 (5th Cir. 2025), I did so based on an individualized assessment of the facts of the case. The portion from which I dissented is at issue here. Thus, I respectfully dissent, consistent with what I previously wrote in *Kimble*, and for the following reasons.

*Kimble* was preceded by a similar case, *United States v. Reyes*, 141 F.4th 682 (5th Cir. 2025). In *Reyes*, this panel applied an individualized assessment in upholding the constitutionality of § 922(g)(1) by relying on Reyes' entire criminal history, including juvenile offenses, to conclude that Reyes posed a credible threat to the physical safety of others. *Id*. at 686–87. "It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court." *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014) (citation omitted). Because the *Kimble* panel was without authority to overrule *Reyes*, I would conclude that *Reyes* is controlling.

Further, subsequent published decisions of this court have continued to rely on an individualized assessment of conduct. *See United States v. Alaniz*, No. 24-40236, 2025 WL 2268352, at *1–2 (5th Cir. Aug. 8, 2025)[1] ("Considering a defendant's entire criminal record makes sense, given that the government doesn't need to prove the specific predicate felony in securing a conviction under § 922(g)(1) in the first place.") (internal marks and citation omitted); *see also United States v. Morgan*, 147 F.4th 522, 528

---

[1] An order granting a motion to publish this opinion was entered on Aug. 15, 2025.

10

No. 23-10952

(5th Cir. 2025) (relied on underlying "conduct forming the basis of his conviction," and concluded that consideration of "misdemeanors and other alleged conduct that did not result in qualifying convictions" was "permissible and revealing").

There is simply no basis for concluding that the court will only do an individualized assessment so long as it supports a constitutional application. Thus, I agree with the concurring opinion that an individualized assessment of dangerousness is appropriate here.

For these reasons, I respectfully dissent.